# CHARLESTON.

FARMERS' & SHIPPERS' LEAF TOBACCO WAREHOUSE COMPANY
*v.* PRIDEMORE.

| 55 | 451 |
| f66 | 200 |

Submitted March 8, 1904—Decided March 19, 1904.

1. PERJURED TESTIMONY—*Former Trial.*
   As a general rule a bill in equity based on perjured testimony, given at the law trial, or on false or forged documentary evidence introduced there, will not be entertained; and the allegation that the complainant was surprised by the perjury or forged evidence does not change the rule. (p. 464).

2. TRIAL VOLUNTARILY—*Error—New Trial.*
   It is a rule of law that a party voluntarily going to trial does so at his peril; and he cannot have a new trial merely to give him an opportunity of impeaching the testimony of a witness of which he was apprised, or could have been apprised beforehand, and of the very purpose for which the witness was to be called. (p. 464).

3. INJUNCTION—*New Trial—New Evidence.*
   Where a complainant asks an injunction against a judgment, alleging in his bill that he is now able to prove the matter of his plea or defense of the action at law, which he was unable to prove at the trial, but does not allege some reason founded in fraud, accident, mistake or some adventitious circumstance, beyond his control, as the cause of such failure of proof, the injunction should not be allowed. (p. 465).

4. SYLLABUS APPROVED.
   Points 2, 3 and 4 of Syllabus *Bloss* v. *Hull*, 27 W. Va. 503, approved and applied. (p. 463).

Appeal from Circuit Court, Lincoln County.

Bill by the Farmers' and Shippers' Leaf Tobacco Warehouse Company against James Pridemore. Decree for defendant, and plaintiff appeals.

*Affirmed.*

D. E. WILKINSON, LACE MARCUM, and CAMPBELL, HOLT & DUNCAN, for appellant.

C. W. MAY, and SIMMS & ENSLOW, for appellee.

MILLER, JUDGE:

The Farmers' & Shippers' Leaf Tobacco Warehouse Com-

pany, a corporation formed and existing under the laws of the State of Ohio, and having its principal office and place of business in the City of Cincinnati, Ohio, on the 29th day of May, 1899, instituted its civil action before J. C. Rusk, a Justice in and for the county of Lincoln, in Carroll District thereof, against James Pridemore, for the recovery of the amount due on two contracts in writing, to-wit: one a promissory note of said Pridemore to said Company, bearing date on the 26th day of March, 1896, for $30.00, payable sixty days after its date, with interest at eight per cent, being advanced on two thousand pounds of tobacco, to be shipped to said company; and the other for $109.00, bearing date on the 28th day of March, 1896, made and payable as aforesaid, sixty days after its date, with interest at eight per cent, also being advanced on four thousand pounds of tobacco, to be shipped to the company. Both instruments contain certain provisions, concerning commissions to the company on the tobacco. The summons commencing the action was made returnable on the 10th day of June, 1899. On that day, the trial seems to have been continued until the 8th day of July, 1899, when, on motion of the plaintiff, the trial was again continued until the 29th day of July, following. On the day last mentioned, the defendant demanded a jury, whereupon the case was further continued until the 31st day of July, 1899. A jurry was then empaneled which found and returned the following verdict: "In the matter of difference between the plaintiff and defendant, we, the Jury, find for the defendant for the sum of $123.90." Thereupon, D. E. Wilkinson, attorney for the plaintiff, who is also counsel for appellants, upon this appeal, requested the justice to suspend judgment upon the verdict, until 3 o'clock P. M., on August 1, 1899, which was done, and, at that time, he moved the justice to set aside the verdict; but the justice refused to do so, and then entered judgment upon said verdict in favor of Pridemore against the company for $123.90, with interest thereon, until paid, and costs. The transcript from the docket of the justice shows that the plaintiff filed the two notes, amounting to $139.00, to be credited with $111.55, and demanded judgment for $27.45, the balance of principal, with proper interest thereon. The defendant filed his claim for $123.90, as a set off: "and the plaintiff and defend-

ant being ready for trial," &c., the jurors were selected, and sworn, and having heard the evidence and argument of counsel, found the verdict aforesaid. No appeal was applied for, or taken by either party from the judgment thus rendered.

On the 29th day of November, 1899, appellant, the plaintiff in the civil action, instituted its suit in chancery in the circuit court of said county; and, on the 23rd day of the same month, filed its bill against said Pridemore, alleging that it carries on the business of commission merchant, in the city of Cincinnati, Ohio, and handles and sells leaf tobacco; that during the year 1895, it handled and sold for James Pridemore & Bro., tobacco amounting to the net sum of $1,086.10, which sum it paid to them in full, at the close of the year, and that the firm of James Pridemore & Bro. consisted of said James Pridemore and John Pridemore. Plaintiff further says that some of the shipments made to it, during the year 1895, by James Pridemore & Bro. were made in the name of James Pridemore, individually, and some in the name of Pridemore Brothers; that one of said shipments of three hogsheads of tobacco was made in the name of James Pridemore, was received by plaintiff on the 21st day of June, 1895, and was sold by it on the 14th day of August, 1895, the net proceeds of which amounted to $151.35, and for which shipment, plaintiff delivered to said James Pridemore, a statement, bearing date on the 14th day of August, 1895, and, at the same time, gave to the firm of James Pridemore & Bro. credit therefor on its books; and that the amount thereof was paid in full to said James Pridemore & Bro., within the year 1895, as aforesaid. Plaintiff also alleges that, through its agent, it advanced to James Pridemore the said sums, represented by said two notes sued on, amounting to $139.00; that on the 17th day of June, 1896, it received from James Pridemore two hogsheads of leaf tobacco, which it, on the 2d day of December, following, sold for the net sum of $111.55, and gave credit for that amount on the said notes, leaving a balance due thereon of $27.45, principal. It is further averred that said judgment is erroneous; that, instead thereof, plaintiff should have recovered a judgment against the defendant for said balance of $27.45 with interest; that said judgment was obtained through fraud, undue means and false testimony; that on the trial of said

action, said James Pridemore introduced said statement of the three hogsheads of tobacco, shipped in his name in the year 1895, which amounted to the sum of $151.35 as aforesaid, and which sum had been credited to said James Pridemore & Bro., and paid to them in full in the year 1895, as aforesaid; that the date of said statement had been changed from August 14, 1895, to August 14, 1896; that the statement was admitted as evidence on the said trial; that said James Pridemore testified before the jury that the said three hogsheads of tobacco mentioned in the statement had been shipped to the plaintiff in 1896 in his own name; and that he had received the said statement in August, 1896. Plaintiff further alleges that the change of the date of the statement, relating to the three hogsheads of tobacco was and is a forgery against it, and to its prejudice; that the testimony of Pridemore was and is untrue; that said Pridemore introduced further evidence on the trial that he had shipped in the year 1896, five hogsheads of tobacco to plaintiff; that he had been credited with only two of them, amounting to the net sum of $111.55; and that the other three hogsheads were represented in the statement aforesaid for $151.35. Plaintiff also alleges that it had no notice whatever of any defense to its demand against Pridemore until after it had closed its evidence on the trial, except the bare claim of $151.35 for tobacco; that the introduction of the forged statement aforesaid for the three hogsheads of tobacco, amounting to $151.35, purporting to have been made by plaintiff on the 14th day of August, 1896, was a surprise to plaintiff; that it had no means then at hand by which to discover the fraud which Pridemore was attempting to perpetrate, and did thereby perpetrate on the plaintiff; and that the fraud thus perpetrated on the plaintiff by reason of this forged statement was not discovered by it until several days thereafter, when it was too late for any relief at law against the fraud. The plaintiff also avers that it did not receive, during the year 1896, any shipments in the name of James Pridemore, except the two hogsheads of tobacco, the proceeds of the sale of which, amounted to said $111.55, and which sum was credited to him as aforesaid; that after the time had expired in which an appeal could have been taken from said judgment, or to move for a new trial of the action upon the ground of newly discovered evidence, it learned the fact that

said James Pridemore had shipped two hogsheads of tobacco, during the year 1896, other than the two for which he had been given credit as aforesaid, in the name of W. Vickers, his brother-in-law; that plaintiff had paid to Vickers the net proceeds of the sale of said two hogsheads; that plaintiff was, at the time of said judgment, entirely ignorant of the fact that said tobacco was the property of Pridemore; that, if Pridemore shipped to plaintiff any other hogsheads of tobacco, during the year 1896, such shipment was made in the name of some person other than himself; that if Pridemore shipped the other hogshead, during the year 1896, it was shipped in the name of some other person to the plaintiff at that time unknown; that it did not know until the time to move for a new trial, and until the time to take an appeal had elapsed, that the said two hogsheads of tobacco had been shipped in the name of Vickers as aforesaid; that plaintiff did not have any means of ascertaining that fact prior to said trial; and that it could not, by the use of due diligence, have ascertained such fact before said trial and rendition of judgment as aforesaid. Plaintiff further charges that the testimony of said James Pridemore, as to the shipment of the three hogsheads of tobacco mentioned in said forged statement was absolutely false; that the alteration of the date of the statement aforesaid by James Pridemore, from 1895 to 1896, was and is a forgery which the said James Pridemore wilfully committed with the specific intent to defraud the plaintiff thereby; that the judgment rendered by the justice as aforesaid against plaintiff was and is a fraud against it; that the judgment was obtained by false and perjured testimony; that said judgment and every part thereof is unjust and erroneous; and that the said Pridemore is justly indebted to the plaintiff in the sum of $27.45, with proper interest. The bill then prays an injunction to restrain, inhibit and enjoin said James Pridemore from collecting or attempting to collect said judgment; that the said judgment for $151.35, in favor of Pridemore be set aside; that a new trial of said action be granted to plaintiff; and for general relief. The injunction was granted by the court as prayed for in the bill; whereupon the defendant Pridemore, filed his demurrer to said bill in which demurrer the plaintiff joined; and he also filed his answer in which he specifically denies all of the material allegations of the bill, and

specifically avers therein that at the trial of said action, plaintiff was represented by its attorney, and by B. F. McGee, its agent, who negotiated and represented it, in the transactions relating to the tobacco; that the matter now in controversy was then and there fully litigated; that none of the evidence, given on said trial was taken down; that plaintiff made no effort to obtain an appeal from said judgment, or to bring it into the circuit court by *certiorari;* and that there was no fraud, collusion, or false swearing on the part of defendant or any of his witnesses to bring about said verdict and judgment. Respondent further avers that, at the first calling of the case before the justice, he filed his account as required by law, showing that he would claim credit for three hogsheads of tobacco sold by plaintiff for him on the 14th day of August, 1896, amounting to $151.35; that when he so filed his account, which is evidenced by the original statement filed before the justice, the plaintiff, then and there demanded of, and obtained from, the justice a continuance of the trial of said action, for the reason that the filing of the account was new matter; and that it was necessary for it to have a continuance in order that it might secure evidence in relation thereto; that it was granted a continuance for that purpose; and that it did procure the evidence of certain witnesses, and submitted it to the jury to show that defendant did not ship to it the three hogsheads of tobacco as claimed by him. Respondent further says that plaintiff had full notice of the nature of his defense to its action and a fair opportunity of being heard in respect thereto; that, if plaintiff had any evidence in relation to said three hogsheads of tobacco, which was not submitted to the jury, it was its own fault, and that all of said matters arising in said action were passed upon by the jury and justice, and were fully and completely litigated and adjudicated, between the parties. Depositions were taken by both parties, and filed in the cause. On the 27th day of August, 1901, the cause was heard upon the bill and exhibits, the answer of defendant Pridemore with general replication thereto, and upon the depositions taken and filed, as aforesaid; whereupon the injunction was dissolved, and the bill dismissed at plaintiff's cost. From this decree, plaintiff was allowed an appeal, and assigns as ground of error, that the circuit court refused to grant it the relief prayed for in its bill.

By the depositions of plaintiff's sales clerk, auditor, and of
other witnesses, who file statements taken from the books of
the company, the contention of plaintiff as to the number of
hogsheads of tobacco shipped to it by Pridemore & Bro. in 1895,
and by James Pridemore in 1896, and as to the disposition of
the net proceeds of the sales thereof is sustained. The sales
clerk, having inspected the statement for the three hogsheads
of tobacco, put in evidence on the trial by the defendant, says
that he made out the same on the 14th day of August, 1895;
that it is his best impression that he immediately mailed the
statement to Pridemore; and that he did not make out or
mail to Pridemore any such statement, in 1896; but the
witness is not asked, and does not testify that said statement
has in any manner been changed or altered since he made out,
and mailed the same to Pridemore. It is shown that the state-
ment appears to be in the same hardwriting as the entry on the
company's account of Sales Book for the month of August,
1895. Witness Beazell, the Assistant Cashier of the Citizens'
National Bank testifies as follows: "I find the statement,"
(meaning the statement of the hogshead of tobacco in question)
"somewhat defaced, but that on careful examination under a
magnifying glass, the date is undoubtedly August 14, 1895. I
also find that the account of sales corresponds with an entry on
the account of sales books of the company, under date of August
14, 1895, and the five in the account of sales book bears a strik-
ing resemblance to the five in said account of sales. I find that
the figure five in the 1895 in the Pridemore account of sales
seems to have been tampered with to make it look like a figure
six, by placing a dot in the middle of the figure, which dot seems
to have been made with different colored ink from that ordina-
rily used, and thus, makes the statement read 1896 instead of
1895." B. F. McGee, another witness for the plaintiff, testifies
that he was the agent of the plaintiff, during the years 1895,
1896 and 1897; that he was present at the trial of said action;
that he never examined the statement for the three hogsheads of
tobacco, introduced by Pridemore as evidence, until the day of
the trial; but that he knew of a similar statement for the same
tobacco. James Pridemore testifies that the statement for the
three hogsheads of tobacco was not forged by him, or by any
other person that he knew of; that his evidence given before

the justice and the jury was the truth; and that said judgment. is the just amount due him from the plaintiff.  There is much more of the evidence, but a sufficient portion thereof has been stated for the purpose of making a proper application of the legal principles involved in the determination of this cause.

It has been stated that the judgment complained of was rendered by a justice.  Section 50 of chapter 50 of the Code, prescribes the "rules of pleading" for that court, as follows: "First—The complaint by the plaintiff. Second—The answer by the defendant.  (2)  The pleadings may be oral or in writing; if oral, the substance of them shall be entered by the justice in his docket; if in writing they shall be filed by him and a reference to them be made in the docket.  In either case if the parties appear and the defendant make defense they shall be made up on the return day of the summons, unless good cause be shown to the contrary.  (4)  The answer of the defendant may contain: First—A denial of the complaint or some part thereof; second— a statement of the facts constituting a defense or counter claim. (5)  Such pleadings are not required to be in any particular form, but must be such as to enable a person of common understanding to know what is intended.  (6)  Either party may except to a pleading of his adversary when it is not sufficiently explicit to be understood, or it contains no cause of action or defense.  (7)  If the justice deem the exception well founded he shall order the pleading to be amended, and if the party refuse to amend, the defective pleading shall be disregarded.  (8)  In an action or defense founded upon an account, note, or other writing for the payment of money, it shall be sufficient for the party to deliver the account, note, or other writing to the justice and to state that there is due to him thereon from the adverse party a specific sum, which he claims to recover or set-off in action.   *   *   *   (10)  The pleadings may be amended at any time before the trial, or during the trial, when by such amendment substantial justice will be promoted.  If the amendment be made during the trial and it be shown to the satisfaction of the justice by the oath of the opposite party, or his agent or attorney that a continuance of the cause is necessary in consequence of such amendment, a continuance shall be granted.  *   *   *   (11)  The justice may, at any time before the trial, require either party at the request of

the other, at that or some other specified time, if the action or defense be founded upon an account, to file a complete statement of the items thereof, with his complaint or answer, and in case of his default, may preclude him from giving evidence at the trial of any item not so filed." A defendant who files an account, or claim of set-off against the plaintiff's demand, is deemed to have brought an action against the plaintiff for such account, or claim of set-off at the time of filing the same.

It is alleged and proved by plaintiff that it did not know, and had no means of knowing, that defendant had the said statement for $151.35, bearing date August 14, 1896, until he offered it as evidence on the trial; and upon this ground with others, it asks in this cause that said judgment be set aside, and that a new trial of the action be granted to it. It is shown that McGee, the agent of plaintiff, was conversant with the transactions between Pridemore & Bro., and James Pridemore, and plaintiff; that he knew before, and at the time of the trial, that Pridemore had a statement relating to the tobacco; that he (McGee) was present with plaintiff's attorney, Wilkinson, at the trial; and that a continuance of the case had, before that time, been granted to enable the company to procure evidence with which to contest the defendant's claim. Plaintiff could have demanded that the pleadings of the defendant be filed on the return day of the summons, and, if insufficient, could have excepted thereto. It could have demanded that the account of defendant against the plaintiff be filed with the justice with a complete statement of the items thereof. Before the trial, at plaintiff's request, it was the duty of the justice to require the defendant to file a complete statement of the items of his account, upon which he demanded judgment. The plaintiff seems to have been satisfied with such pleadings and notice of defense as defendant had filed before and at the time of the trial. It demanded no other or better notice by written or oral statement from defendant; but went to trial before a jury, and submitted its evidence, upon the whole case. Under the statute above cited, if the plaintiff had been surprised, during the trial, by the production of the account in question by the defendant, and it had been then shown to the satisfaction of the justice by the oath of the plaintiff, or its agent or attorney, both of whom were present, that a continuance of the cause was necessary, in consequence thereof, it would have been the

duty of the justice to have granted such continuance, upon such terms as to him seemed just. The statement from the books of plaintiff, introduced in this cause to show the alleged alteration of the account filed by defendant as aforesaid, and to prove the falsity of defendant's evidence given on said trial, were all in the possession of plaintiff before and at the time of the trial. It is admitted in plaintiff's brief that the plaintiff's office and place of business is only 182 miles from the place of the trial by the justice. From the return day of the summons, June 10, 1899, to the day of the trial of the action, July 31, 1899, the plaintiff had ample time to procure its books, papers and witnesses from Cincinnati to refute the claim of defendant, Pridemore, concerning said account if it had such evidence. We know that the transmission of a letter from the office of the justice in Carroll District of Lincoln county to the company, by its attorney or agent, and a reply thereto, would not necessarily have required very many days. There is no reason shown why the evidence of the plaintiff presented in this cause was not adduced before the jury and justice, except the statement of plaintiff that it had no means of knowing that the said account was forged, or that the evidence of defendant was false. It seems by its production by the company in this cause, that the plaintiff then had the same evidence upon that question which it now has. If the plaintiff had demanded its rights under the statute, cited, its present defense to said account and judgment could have been fully presented to, and considered by, the jury on said trial. 2 Story Eq. Jur. section 895, says: "And this leads us to remark in the next place that relief will not be granted by staying proceedings at law after a verdict, if the party applying has been guilty of *laches* as to the matter of defense, or might by reasonable diligence have procured the requisite proofs before the trial." Section 896 of this work, citing authority therefor says: "It is not sufficient to show that injustice has been done; but that it has been done under circumstances which authorize the court to interfere. Because if a matter has been already investigated in a court of justice, according to the common and ordinary rules of investigation, a court of equity cannot take on itself to enter into it again. Rules are established, some by the Legislature, some by the courts themselves, for the purpose of putting an end to litigation.

And it is more important that an end should be put to litigation than that justice should be done in every case." As a general rule, a court of equity will not interfere with a judgment at law, solely because the principal'witness was mistaken as to facts, and was subsequently found to be in error. Nor will relief be granted where the party has been deprived of his defense, in any manner, through his neglect or *laches. Vaughn* v. *Johnson, et als.* 1 Stok. Chy. 173; *Walker* v. *Kretsinger et al,* 48 Ill. 502. Relief will not be granted for the purposes of a new trial at law, where the party lost his opportunity of defense by his own negligence. *Dodge et al.* v. *Strong,* 2 Johns. Chy. 228. The jurisdiction of a court of equity over trials at law, compelling the party who has gained a verdict to submit to a new trial, or be forever enjoined from proceeding on his verdict, is now very rarely exercised, and never, except in a very clear case of fraud or injustice, or upon newly discovered evidence, which could not possibly have been produced at the first trial. *Floyd* v. *Payne,* 6 John. Chy. 479. An injunction will not be granted to stay proceedings at law, on a judgment on the ground that the defendant at law was prevented, by public business, from making due preparations for, and attending at, the trial, and that the plaintiff had, on the evidence of one witness, whom he had suborned to swear falsely, recovered a verdict for a much larger sum in damages than he was·justly entitled to; and that the supreme court.had refused to grant a new trial in the cause. *Smith* v. *Lowry,* 1 John. Chy. 320; High on Inj. Vol. 1, section 173..

Appellant contends that it should have the judgment aforesaid set aside, and cites *Marshall* v. *Holmes,* 141 U. S. 589, which, among other things, says: "That a trial was had of the suit No. 607, and the said Mayer introduced evidence of the existence of a letter from your petitioner to the said Boyd authorizing him, the said Boyd, to make a contract by which her lien as lessor on the crops produced by the several defendants and other tenants on said plantation should be waived in favor of the said Mayer or of others, as furnishers of supplies to said tenants; that upon such evidence so offered, and of the existence of which the petitioner could not possibly be aware and of which she had no knowledge until subsequent to the trial, judgment was rendered against her in said suit and in

the several other suits mentioned * * * * * that the pretended letter authorizing him to make such contract, if it ever had an existence, which peitioner denies, was a false and forged document, not written and not signed by her; that your petitioner has never authorized the said Boyd or any other person whatsoever to waive her lien as lessor in favor of the said Mayer or any other furnisher of supplies, and has never written the pretended letter or any other letter to the said Boyd or to any other person whatsoever containing such authority; * * * * * that the testimony of said Mayer as to the existence of said pretended letter is false and in pursuance of a conspiracy to defraud petitioner, or that said pretended letter, if it ever had an existence, is a false and forged document; that this testimony, and much more testimony necessary to establish the falsity of said evidence upon which said judgments were obtained, and the forgery of said pretended letter to said Boyd, was unknown to petitioner at the time of the trial and could not have been known to or anticipated by her, and has been discovered by her since the rendition of said judgments in said suit and since the lapse of the legal delays within which a motion could be made for a new trial, and that there has been no *laches* on her part in failing to show the falsity of such evidence and the forgery of such pretended letter on the trial of the cause." At page 592, the court says: "Such was the case made in the petition. The relief asked was an injunction against Mayer and the defendant in error, Holmes, sheriff of the parish, restraining them from executing the above judgments or any of them; that Mayer be cited to answer the petitioner's demand; that the judgments be annulled and avoided as obtained upon false testimony and forged documents; and that the petitioner have general and equitable relief." And, at page 596, the court further says: "According to the averments of the original petition for injunction filed in the state court—which averments must be taken to be true in determining the removability of the suit—the judgments in question would not have been rendered against Mrs. Marshall but for the use in evidence of the letter alleged to be forged. The case evidently intended to be presented by the petition is one where, without negligence, *laches* or other fault upon the part of petitioner, Mayer has fraudulently obtained judgments which he seeks, against con-

science, to enforce by execution. While, as a general rule, a defense cannot be set up in equity which has been fully and fairly tried at law, and although, in view of the large powers now exercised by courts of law over their judgments, a court of the United States, sitting in equity, will not assume to control such judgments for the purpose simply of giving a new trial, it is the settled doctrine that 'any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery.' *Marine Ins. Co.* v. *Hodgson,* 7 Cranch, 332, 336; *Hendrickson* v. *Hinckley,* 17 How. 443, 445; *Crim* v. *Handley,* 94 U. S. 652, 653; *Metcalf* v. *Williams,* 104 U. S. 93, 96; *Embry* v. *Palmer,* 107 U. S. 3, 11; *Knox County* v. *Harshmon,* 133 U. S. 152, 154; 2 Story's Eq. Jur. sections 887, 1574; *Floyd* v. *Payne,* 6 Johns. Chy. 479, 482. See also *United States* v. *Throckmorton,* 98 U. S. 61, 65."

It will be at once observed that, in the case above cited, the letter was alleged to be a forgery, and that plaintiff in that case had no knowledge, or means of knowledge thereof, until after the trial of the case, and until after the time had elapsed in which a motion for a new trial could have been made. The case before us is very different. Here the plaintiff had its books, and its witnesses, before and at the time of the trial. By the use of due diligence it could have had its evidence before the jury and justice at the trial of the action in which the judgment complained of was recovered against it.

Plaintiff also cites *Bloss* v. *Hull,* 27 W. Va. 508, as follows: "A new trial will not be granted on the ground of newly discovered evidence, when it goes merely to impeach the testimony of a witness at a former trial, nor to let in cumulative evidence as to matter which was principally controverted at the former trial; but if the newly discovered evidence is sufficient to utterly destroy the former testimony by showing that it was entirely false or founded on perjury, then a new trial should be granted. The rule, in this respect is the same both in courts of equity and at law. But where the testimony thus discovered relates to a fact which was in issue and supported by evidence in the former trial it must be of a conclusive character, such

as if it had been produced on the former trial should have·
produced a different verdict, and which would· necessarily en-
title the plaintiff to relief in the suit in which it is alleged,.
unless overcome by new evidence from the opposite side. Story's
Eq. Pl. s. 413; *Livingston* v. *Hubbs,* 3 Johns. Chy. 124; *Pe-
gram* v. *King,* 2 Hawks 605. * * * * * * Second—Equity
will not relieve a party against a judgment at law, on the·
ground of after-discovered evidence, or of a defense, of which·
he was ignorant, until judgment was rendered, unless he shows,.
that by the exercise of ordinary diligence he could not discover
such evidence or defense, or that he was prevented from em-
ploying the same by fraud, accident or the act of the opposite
party, unmixed with *laches* or negligence on his part. *Shields*
v. *McClung,* 6 W. Va. 79; *Knapp* v. *Snyder,* 15 *Id.* 434; *Slack*
v. *Wood,* 9 Grat. 40; *Enquirer Co.* v. *Robinson,* 24 *Id.* 548.
*Hevener* v. *McClung,* 22 W. Va. 81, is very much like the case
at bar.   There the defense sought to be introduced was a legal
defense, which was suspected by the plaintiff to exist before the
judgment at law was rendered, and he was apprised of the evi-
dence by which he could prove it, if it really existed, but he
failed to produce the evidence and let judgment go· against
him."   This Court held that such party was not entitled to re-
lief in equity.   We are unable to see how this case supports the
contention of appellant.

As a general rule, a bill for relief based on perjured testi-
mony given at the law trial, or on false or forged documentary
evidence introduced there, will not be entertained; and the allc-
gation that the complainant was surprised by the perjury or
forged evidence does not change the rule.   11 Ency. Pl. & Pr.
1183.   It is a rule of law, on the subject of new trials, that a
party going voluntarily to trial goes at his peril, and he cannot
have a new trial merely to give him an opportunity of im-
peaching the testimony of a witness of which he was apprised,
or could have been apprised before hand, and of the very pur-
pose for which he was to be called.   He must, at least, show
that he had since discovered testimony of which he had no
knowledge before the trial.   *Woodworth* v. *Buskerk,* 1 Johns.
Chy. 432; *Gott* v. *Carr,* 6 Gill & J. 309.   Here the plaintiff
could have been apprised before and at the time of the trial
of the action before the justice, of the very purpose for which

the witnesses for the defendant were to be called, had it required the defendant to file a complete statement of the items of his account, for which he claimed a set-off and judgment. The mischief of re-trying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged, or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases. *U. S.* v. *Throckmorton,* 98 U. S. 61. The doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. *Hamilton* v. *McLean,* 139 Mo. 678, 687.

There is no allegation of fraud, accident, mistake, or other adventitious circumstances, in the plaintiff's bill, whereby it was prevented from producing *its proof in defense of said account, on the trial before the justice.* Failure of proof upon the trial at law will not, in the absence of fraud, accident, mistake or other adventitious circumstances, warrant a court of equity in granting relief against a judgment. Thus, where complainant asks an injunction against a judgment, alleging in his bill that he is now able to prove the matter of his plea in defense of the action at law, which he was unable to prove at the trial, but does not suggest fraud, accident, mistake or other circumstances as the cause of such failure of proof, the injunction will not be allowed. High on Inj. ch. 3, section 168; *Shields* v. *McClung,* 6 W. Va. 79; Hogg's Eq. Pr. 472, 473. There is no allegation in the bill that plaintiff applied for, or was refused, an appeal from the judgment. No sufficient reason is averred therein why it did not make such application. If sufficient relief could have been had by an appeal from the judgment, but the party aggrieved has been negligent in prosecuting his appeal, and has thereby lost his remedy, he will be denied relief by injunction against the judgment, so, too, a judgment debtor who has lost his remedy by appeal by reason of a defect in his proceedings, will not be allowed to enjoin the judgment. *Long* v. *Smith,* 39 Tex. 160. In the case of *Brown*

v. *Nutter,* (46 S. E. 375), 54 W. Va. 82, this Court holds that, to sustain a bill of review for newly discovered evidence, the duty devolves upon the plaintiff, first to produce evidence clearly decisive of the case; second, to show that such evidence could not have been discovered by due diligence. Hogg's Eq. Pr. 476, 477. According to the well settled principles of equity, the plaintiff has wholly failed to make out such a case as entitles it to the relief prayed for, because the matters in controversy between the parties were submitted to the jury and justice, and passed upon without objection by either litigant. The alleged newly discovered evidence was then in possession of plaintitff, and could have been produced by it on the trial by the use of due' diligence. As shown, it is either cumulative or contradictory of Pridemore's evidence. We are of opinion that there is no error in the decree of the circuit court appealed from.

The decree is therefore affirmed.

*Affirmed.*